## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **BRENDA IRIZARRY-PAGAN** *et al.*,<br>    Plaintiffs,<br><br>    v.<br><br>**METRO SANTURCE, INC.** *et al.*,<br>    Defendants. | Civil No. 18-1532 (JAG/BJM) |

## REPORT AND RECOMMENDATION

Plaintiffs Brenda Irizarry Pagan *et al.* (collectively "Plaintiffs") filed a wrongful death action against Metro Santurce, Inc. *et al.* (collectively "Defendants"), a group that includes Dr. Guillermo Vazquez Andino ("Dr. Vazquez"), a specialist in internal medicine with a sub-specialization in infectious diseases, after their relative Mercedes Ferrer Perez ("the patient") died in front of them at Hospital Pavia Santurce. Dr. Vazquez has moved for partial summary judgment in his favor, claiming that Plaintiffs' expert witness has confirmed that any violations of standards of care he committed while treating the patient were not causally related to her demise. Dkt. 92. Plaintiffs opposed, Dkt. 100, and Dr. Vazquez replied. Dkt. 121. Dr. Vazquez also submitted a statement of proposed uncontested material facts in connection with his motion, Dkt. 93, Plaintiffs responded, Dkt. 100-1, and Dr. Vazquez replied to their response. Dkt. 122. Dr. Vazquez's motion has been referred to me for a report and recommendation. Dkt. 146. For the reasons that follow, I recommend that Dr. Vazquez's motion for summary judgment be **GRANTED**.

## BACKGROUND

The following facts are drawn from the parties' Local Rule 56 submissions and presented in the light most favorable to the nonmoving party. *See, e.g.*, *In re Oak Knoll Assocs., L.P.*, 835 F.3d 24, 29 (1st Cir. 2016). I have omitted portions of the proposed facts that state conclusions of

law or that I deem irrelevant, but I otherwise resolve any conflicts between the parties' versions of events in favor of Plaintiffs.

Plaintiffs Brenda M. Irizarry Pagan, Dr. Emily E. Irizarry Pagan, Federico Perez Irizarry, and Cristian Perez Irizarry are adult grandchildren of the patient. Plaintiff Juan Carlos Izquierdo Amieiro is a grandchild-in-law of the patient. Defendants are Dr. Vazquez; Metro Santurce, Inc., a corporation that owns Hospital Pavia Santurce ("Hospital Pavia"); and various other named and unnamed doctors and insurance companies.

The patient died on August 4, 2016 of atrial fibrillation brought on by hypercapnia and heart failure that resulted in acute myocardial infarction. Dkt. 100-1 at ¶ 13. Plaintiffs allege in their complaint that Dr. Vazquez fabricated "adequate" vital signs for the patient on the afternoon of August 4 at approximately 3:54 p.m. despite not actually seeing the patient at that time, that her vital signs were not actually adequate at the time, that Dr. Vazquez did not provide due care and necessary palliative treatment to the patient, that he failed to perform a differential diagnosis on the patient, that he failed to create and maintain an adequate medical record, and that he failed to offer proper treatment for the patient when she was allegedly suffering from an acute myocardial infarction. *Id*. at ¶ 2.

Plaintiffs' expert witness, Dr. Ian Cummings ("Dr. Cummings"), a medical expert with experience in both teaching and practicing medicine, was deposed beginning on October 12, 2019; the deposition continued on May 1, 2021. *Id*. at ¶ 3. During his deposition, Dr. Cummings confirmed that there were two instances of negligence that he identified in his report involving Dr. Vazquez when it came to treating the patient. *Id*. at ¶ 4. These were instances in which he accused Dr. Vazquez of deviating from standards of care by failing to answer a consultation to infectious diseases within twenty-four hours and fraudulently documenting a patient visit that did not actually

occur. *Id*. at ¶ 5. Dr. Cummings has admitted under oath that Dr. Vazquez failing to answer a consultation to infectious diseases within twenty-four hours did not have any bearing on the outcome of the case. *Id*. at ¶ 9. However, Dr. Cummings went on to explain during deposition testimony that Dr. Vazquez would have had an "ethical obligation" to act if he had seen the patient while she was in the throes of death, that if Dr. Vazquez would have gone into the room while the patient was dying "like he said he was going to do" that we would have noted that the patient was dying and would have called a code blue, and that "he basically deprived the patient of the opportunity to possibly survive her death spiral." *Id*. at ¶¶ 5, 12.

The patient died in the late afternoon in front of her family members. Plaintiffs claim that the patient underwent needless pain and suffering and that she died sooner than she otherwise would have due to her deficient treatment. They argue that the treatment the patient received was substandard and inappropriate at many junctures. Plaintiffs claim that they themselves suffered emotional harm as a result of this substandard treatment. They accuse the defendants of negligence amounting to medical malpractice resulting in the patient's death and request a declaration that the defendants committed medical malpractice as well as an award of $75,000.00 each plus costs for non-economic damages.

In a previous report and recommendation, I recommended that Dr. Cummings's opinions and testimony regarding Dr. Vazquez be excluded from further proceedings in this matter. Dkt. 149. Plaintiffs do not appear to offer any alternative evidence to prove that Dr. Vazquez violated standards of care or played a role in causing or contributing to the patient's death.

## APPLICABLE LEGAL STANDARDS

The court views the record on summary judgment in the light most favorable to the nonmovant. *See, e.g.*, *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de*

*Puerto Rico*, 394 F.3d 40, 43 (1st Cir. 2005). However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has presented evidence of the absence of a genuine issue, the nonmoving party must respond by "placing at least one material fact into dispute." *FDIC v. Anchor Props.*, 13 F.3d 27, 30 (1st Cir. 1994).

This is a diversity action; thus, the substantive law of the forum state controls. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). For this purpose, Puerto Rico is treated as the functional equivalent of a state. *See, e.g.*, *Rolón–Alvarado v. Mun'y of San Juan,* 1 F.3d 74, 77 (1st Cir. 1993). Plaintiffs who seek to prove medical malpractice under Puerto Rico law must establish three elements. First, they must establish the "duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances)." *Cortés–Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 189 (1st Cir. 1997). Second, they must establish "an act or omission transgressing that duty." *Id*. at 189. Third, they must establish "a sufficient causal nexus between the breach and the claimed harm." *Id*. at 189. A plaintiff "ordinarily must adduce expert testimony to limn the minimum acceptable standard and confirm the defendant doctor's failure to meet it." *Id*. at 190.

## DISCUSSION

As I note above, Dr. Vazquez requests partial summary judgment in his favor, claiming that Dr. Cummings has confirmed that any violations of standards of care he committed were not causally related to the patient's death. It is unclear why Dr. Vazquez characterizes his motion as one for partial summary judgment, and as a result, I treat his motion as though it is one for full rather than partial summary judgment. As I also note above, I have already recommended

precluding all testimony by Dr. Cummings regarding Dr. Vazquez's purported violations of standards of care, and Plaintiffs do not appear to offer any alternative evidence that would satisfactorily establish Dr. Vazquez's supposed violations. Nevertheless, I shall proceed to explain my reasons for precluding Dr. Cummings's testimony regarding Dr. Vazquez in greater detail here.

The report by Dr. Cummings states that Dr. Vazquez violated standards of care in the following ways: he 1) failed to answer an infectious diseases consultation within twenty-four hours; and 2) he fabricated a patient visit at a time when the patient was hypotensive, documenting normal findings despite the patient's hypotensive status. However, Plaintiffs must establish a sufficient causal nexus between a breach and the alleged resultant harm. *Cortés–Irizarry*, 111 F.3d at 189. This means that *whether or not* Dr. Cummings visited the patient's room, his actions (or lack thereof) would have to have somehow caused or contributed to the patient's death. The report does nothing to explain how any violation of standards of care purportedly committed by Dr. Vazquez links to the patient's death, merely stating at the end of the report without any degree of specificity that "the departures from the standard[s] of care by the medical and nursing personnel at Hospital Pavia Santurce were the direct and proximate cause [of] the death of [the patient]." On its own, then, the report is clearly insufficient to establish a causal nexus between Dr. Vazquez's actions and the patient's death.

Plaintiffs note that in deposition testimony, Dr. Cummings clarifies that if Dr. Vazquez *had* gone to the patient's room, he could have called a code blue; he also says that by not being there at the time he supposedly performed the patient visit, Dr. Vazquez "basically deprived the patient of the opportunity to possibly survive her death spiral." Dkt. 132-2 at 155. Dr. Cummings goes on to agree with the idea that in theory, if Dr. Vazquez was in the room as he was supposed to be, then he should have done something like calling in some sort of code, as according to Dr.

Cummings, the patient was already in the process of dying. *Id*. at 153-55. Again, whether or not Dr. Cummings visited the patient's room, his behavior would have to have somehow caused or contributed to the patient's death in order for him to be liable here. However, Dr. Cummings never actually says that calling a code blue would help the patient, merely stating that since Dr. Vazquez allegedly did not visit his patient, she missed the opportunity to "possibly" survive. *Id*. As a result, even considering Dr. Cummings's deposition testimony, he has not adequately explained whether Dr. Vazquez's supposed actions made any difference for the patient. The implication arising from Dr. Cummings's deposition testimony, though not entirely clear, appears to be that if Dr. Vazquez had called a code blue, then the patient may "possibly" have had the opportunity to survive her death spiral. However, Dr. Cummings does not explain how calling a code blue would have given the patient this possibility. He also fails to explain on what grounds Dr. Vazquez would have called a code blue; though Dr. Cummings notes that the patient would have been hypotensive since her blood pressure was around 80/50 at the time, he does not directly connect this to Dr. Vazquez's actions or explain whether the patient's hypotensive status would justify calling a code blue. The necessary causal chain is therefore not fully intact here.

Furthermore, under Puerto Rico law, Plaintiffs in medical malpractice actions have the burden of providing evidence that establishes that the alleged fault and damage is more than a mere hindsight "possibility"; causal connections cannot be established on the basis of speculation or conjecture. *Del Valle Rivera v. United States*, 630 F. Supp. 750, 756 (D.P.R. 1986). Here, proof of causation requires a showing that it is "more probable than not" that the patient's death occurred at least partially as a result of Dr. Vazquez's negligence. *See Maldonado Pagan v. Corr. Health Servs. Corp.*, 16-CV-1173 (DRD), 2018 WL 679453, at *6 (D.P.R. 2018). Dr. Cummings neglects to offer any assessment as to how much more or less probable it would have been that the patient

would have survived or how much longer the patient might have survived for, merely noting that her survival would have been "possible." As a result, it is unclear that Dr. Vazquez's behavior contributed to the patient's death at all, let alone more probably than not, as even if it were clear that Dr. Vazquez "basically deprived the patient of the opportunity to possibly survive her death spiral," it remains unclear how remote this possibility would be or for how long she would survive. Assuming that Dr. Cummings's conjectures are true, he has nonetheless failed to adequately establish that Dr. Vazquez's actions more probably than not contributed to the patient's death.

Since Dr. Cummings has failed to adequately explain whether Dr. Vazquez's actions led to a difference in the patient's outcome, as noted above, I have already recommended finding that Dr. Cummings's testimony regarding Dr. Vazquez's purported violations of standards of care should be precluded. Since I have reached this recommendation, and since I agree with Dr. Vazquez that there is an absence of any expert opinions linking Dr. Vazquez's alleged negligence with the damages claimed by Plaintiffs (since Dr. Cummings is Plaintiffs' sole expert witness), Plaintiffs would have to have a means of establishing causation that does not rely upon expert testimony in order for their case against Dr. Vazquez to proceed. In practice, however, Plaintiffs themselves have claimed that "expert testimony is required to prove causation in medical malpractice suits." Dkt. 100 at 9. While I am not convinced that expert testimony is required to prove causation in medical malpractice cases, *see, e.g.*, *Cortes-Irizarry*, 111 F.3d at 191 (noting that medical malpractice plaintiffs "can" and "often" do establish causation through expert testimony, but seemingly acknowledging that that this is not a universal requirement), it is clear that Plaintiffs themselves believe that expert testimony is in fact required in this case. Perhaps as a result, they offer no alternative theory via which they could establish causation in opposing Dr. Vazquez's motion to dismiss the claims against him. *See generally* Dkt. 100. Moreover, after

reviewing Plaintiffs' other submissions, I have been unable to note any readily apparent alternative theories. As a result, I recommend finding that Plaintiffs cannot establish a "sufficient causal nexus" between Dr. Vazquez's actions and the patient's death.

Since I recommend finding that Plaintiffs cannot sufficiently establish a causal nexus here, I also recommend granting summary judgment to Dr. Vazquez and dismissing Plaintiffs' claims against him. Though Plaintiffs claim that summary judgment is "not the proper vehicle for courts to weigh the evidence," Dkt. 100 at 2, I find it unnecessary to weigh the evidence in this case, as even if I construe all of the evidence in Plaintiffs' favor, Plaintiffs have not established that Dr. Vazquez played a role in causing the patient's death. As a result, no trial-worthy issue exists here, as there is no factual controversy pertaining to an issue that may affect the outcome of the litigation or material fact in dispute. *See Rojas–Ithier*, 394 F.3d at 43 (1st Cir. 2005). Since Plaintiffs have "failed to make a sufficient showing on an essential element of [their] case with respect to which [they] ha[ve] the burden of proof" as to Dr. Vazquez, I recommend finding that Dr. Vazquez is entitled to summary judgment here. *Celotex Corp.*, 477 U.S. at 323 (1986).

## CONCLUSION

For the foregoing reasons, I recommend that Dr. Vazquez's motion for summary judgment be **GRANTED** and that the charges against Dr. Vazquez be dismissed with prejudice.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 25th day of August 2022.

S/ *Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge