IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRENDA M. IRIZARRY-PAGAN, *et al.*,

    **Plaintiffs,**

        v.

METRO SANTURCE, INC., *et al.*,

    **Defendants.**

CIVIL NO. 18-1532 (JAG)

## MEMORANDUM AND ORDER

GARCIA-GREGORY, D.J.

    Pending before the Court is Defendants' Joint Motion *in Limine* to Exclude the Opinions and Testimony of Dr. Ian Cummings (the "Motion"), Docket No. 91; Plaintiffs' Response in Opposition, Docket No. 103; Defendants' Joint Reply, Docket No. 128; and Plaintiffs' Supplemental Motion, Docket No. 132. The Motion was referred to U.S. Magistrate Judge Bruce J. McGiverin for a Report and Recommendation ("R&R") solely as to the issue of whether Dr. Cumming's opinions should be excluded pursuant to *Daubert*. Docket No. 140. The Magistrate Judge recommended granting the Motion in part. Docket No. 149. Defendants filed a timely Objection. Docket No. 150. After considering Defendants' Objection and conducting a *de novo* review of the record, the Court finds that the R&R is supported by both the record and the law. Accordingly, the Court **ADOPTS** the Magistrate Judge's R&R and **GRANTS IN PART** Defendants' Motion.

## STANDARD OF REVIEW

    Courts must conduct a *de novo* review of such parts of an R&R to which specific, written objections have been made. Fed. R. Civ. P. 72(b). "Local Rule 72(d) further provides that such

**CIVIL NO. 18-1532 (JAG)**                                                                                                       2

objections 'shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection.'" *Velez-Padro v. Thermo King de P.R., Inc.*, 465 F.3d 31, 32 (1st Cir. 2006) (quoting L. Cv. R. 72(d)). "Conclusory objections that do not direct the reviewing court to the issues in controversy do not comply with Rule 72(b)." *Id.* Upon review of objections properly made, courts may "accept, reject or modify, in whole or in part, the findings or recommendations" of the magistrate judge. L. Cv. R. 72(d).

## DISCUSSION

The Court agrees with the Magistrate Judge's conclusion that, pursuant to *Martinez v. United States*, 33 F.4th 20 (2022), Dr. Cummings sufficiently explained how certain deviations from the applicable standard of care caused the damages claimed in this case. Defendants' reliance on *Lopez-Ramirez v. Toledo-Gonzalez*, 32 F.4th 87 (1st Cir. 2022) is inapposite. In that case, the First Circuit found that the district court did not abuse its discretion in excluding an expert opinion because the report suffered from several deficiencies that warranted exclusion under *Daubert* and the plaintiffs did not "develop any contention that [the expert's] deposition testimony – which, we note, the District Court also considered but found 'equally unhelpful' – bridges the 'analytical gap' that the District Court identified between [the expert's] stated opinion in his report that there had been a deviation from the standard of care and the basis for that opinion." *Id.* at 96. Such is not the case here, where the Magistrate Judge, as will be discussed below, found that certain deficiencies in Dr. Cumming's report were cured by his deposition testimony.[1]

---

[1] In addressing a *Daubert* challenge, the Court can consider the contents of the expert report as well as deposition testimony. *See Martinez*, 33 F.4th at 28-30.

**CIVIL NO.** 18-1532 (JAG)                                                                 3

First, Dr. Cummings repeatedly referred to the applicable standard of care throughout his deposition when opining on aspects of the patient's treatment. *See Martinez*, 33 F.4th at 29 ("[A]n expert's references . . . to the 'prevailing medical standard' have been found, when read in context, to constitute a satisfactory statement of the national standard of care.") (cleaned up). Moreover, Dr. Cummings received a subpoena *duces tecum* requesting, *inter alia*,

> Any and all reports, drafts of reports, documents, notes, photographs, videos, drawings or other materials generated by, relied upon or reviewed by the deponent in reaching his conclusions, opinions or mental impressions in the present case.
>
> Any and all publications, medical literature, treatises, articles, journals, texts, abstracts, seminar materials, documentation, reference items, regulations, statutes or other materials in which the deponent relied on, used, consulted, reviewed or referenced in coming to his conclusions, opinions, or mental impressions.
>
> All other documents not referred to above upon which the deponent relied on in preparing his report in this case.

Docket No. 103-2. As requested, Dr. Cummings brought all these documents to the deposition, documents that included the medical literature outlining the applicable standard of care on which he relied to reach his opinions. Docket No. 103 at 4-5. Plaintiffs' counsel then sent Defendants a list of the guidelines and articles reviewed by Dr. Cummings "[i]n attention to the above referenced *duces tecum* requests." Docket No. 91-4. While it is true that the letter states that these materials were "reviewed by Dr. Cummings in preparation for his deposition testimony," it also states that the letter was in response to the subpoena, whereby Defendants notified their intent to depose Dr. Cummings regarding his expert report and requested all materials relied upon to reach his conclusions. *See id.*; Docket No. 103-2. It is therefore clear that the list included the materials relied upon by the expert to reach the opinions in his report. As such, Dr. Cummings' expertise, stated familiarity with the applicable standards of care, references to the standard of

**CIVIL NO.** 18-1532 (JAG) 4

care throughout his depositions, and reliance on materials outlining the applicable standard of care are sufficient to find that he adequately put forth the national standard of care.

Second, the Court agrees that Dr. Cummings sufficiently established causation as to the following alleged deviations from the standard of care: Dr. Marrero, Dr. Maldonado, and Dr. Cabrera's alleged failure to admit the patient to telemetry or the ICU; Hospital Pavia's alleged failure to initiate a "code blue" emergency response based on an allegedly invalid DNR; and Dr. Marrero, Dr. Maldonado, Dr. Cabrera, Dr. Rodriguez, Dr. Perez, and Dr. Garcia's alleged failure to sufficiently consider that CHF was contributing to the patient's medical issues. Docket No. 149 at 16-18. In his report, Dr. Cummings concluded that Dr. Marrero, Dr. Maldonado, and Dr. Cabrera deviated from the standard of care by failing to admit the patient to telemetry or the ICU. Docket No. 91-1 at 10-11. Then, in his deposition, he explained that in a monitored setting, such as the ICU, there is a "higher level of care" and complications suffered by the patient "would have been recognized immediately and responded to." Docket No. 132-2 at 69-71. As to the invalid DNR, Dr. Cummings explained that the hospital treated the patient as a DNR and, thus, "deprived her of the opportunity to survive" by "do[ing] nothing." Docket No. 132-2 at 112-15. Finally, Dr. Cumming's report opines that Dr. Marrero, Dr. Maldonado, Dr. Cabrera, Dr. Rodriguez, Dr. Perez, and Dr. Garcia deviated from the standard of care by failing "to sufficiently consider CHF as the cause of the patient's hypercarbia and respiratory distress and instead diagnosing chronic respiratory failure as the cause." Docket No. 91-1 at 10-13. He explained, at his deposition, how these actions caused the damages claimed:

> If early on there had been more attention paid to the patient's abnormal electrocardiography, and if the Troponin had been drawn and the MD had been drawn as Dr. Ayala had initially intended, and if the BNP had been repeated sequentially, then they would, I think, have recognized that this patient had a cardiac issue rather than pure pulmonary issue. They were treating her as a pure pulmonary

**CIVIL NO. 18-1532 (JAG)**                                                                                                                    5

> issue, and . . . they actually overly diuresed her and made her profoundly alkalotic, which by itself – highly alkalotic states carry their own mortality. So they actually, in some part, they well have caused her death, in part at least, by over diureses of her[sic], such that she became profoundly alkalotic . . . And also they, in so doing, failed to attend to the real fact that she had probably cardiac decompensation . . . [which] was what was really in progress and it was avoidable. And they sat there for – how many days without an EKG at all. They sat there for eight days from the arrival to the 3rd BNP test. She sat nine days from the third EKG to the fourth EKG. There was plenty of time, lost opportunities abound in this case where she could have been salvaged. And there were a number of times when they passed by immediate opportunities. Like she had bleeding, reversal of anticoagulation, posterior wall MI, syncope after bleeding on the toilet. These are all things that should have been responded to.

Docket No. 132-2 at 239-242. Considering both his expert report and his deposition testimony, Dr. Cummings explained how he believes the aforementioned deviations from the standard of care contributed to the patient's death.

"There is an important difference between what is *unreliable* support and what a trier of fact may conclude is *insufficient* support for an expert's conclusion." *Milward v. Acuity Specialty Prod. Grp., Inc.*, 639 F.3d 11, 22 (1st Cir. 2011). Several of Defendants' objections, *see* Docket No. 150 at 9-10, "speak to the probative weight of the testimony, not to its admissibility." *Martinez*, 33 F.4th at 33 (citation omitted); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (citation omitted); *Crowe v. Marchand*, 506 F.3d 13, 18 (1st Cir. 2007) ("Objections of this type,

**CIVIL NO.** 18-1532 (JAG)                                                                                               6

which question the factual underpinnings of an expert's investigation, often go to the weight of the proffered testimony, not to its admissibility.") (citations omitted).[2]

For these reasons, the Court **ADOPTS** the Magistrate Judge's R&R, **GRANTS IN PART** Defendants' Motion, and **EXCLUDES** all opinions and testimony not specifically addressed above. *See* Docket No. 149 at 18.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Wednesday, August 31, 2022.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge

---

[2] The Court also notes that, other than addressing a lack of causation as to the alleged failure to admit the patient to telemetry or an ICU setting, Defendants fail to make specific objections as to the remaining opinions regarding causation the Magistrate Judge recommended be permitted. Docket No. 150 at 9-10.