IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**BRENDA IRIZARRY-PAGAN** *et al.*,
    Plaintiffs,

    v.

**METRO SANTURCE, INC.** *et al.*,
    Defendants.

Civil No. 18-1532 (JAG/BJM)

## REPORT AND RECOMMENDATION

Plaintiffs Brenda Irizarry Pagan *et al.* (collectively "Plaintiffs") filed a wrongful death action against Metro Santurce, Inc. *et al.* (collectively "Defendants"), a group that includes Dr. Sylmarie Marrero Martínez ("Dr. Marrero"), an internal medicine hospitalist, after their relative Mercedes Ferrer Perez ("the patient") died in front of them at Hospital Pavia Santurce. Dr. Marrero moved for summary judgment in her favor, claiming that Plaintiffs' expert witness has confirmed that violations of standards of care she committed while treating the patient were not causally related to the patient's demise, her supposed failures to diagnose conditions were the product of reasonable differences of opinion among doctors, and Plaintiffs' expert witness's assertions regarding Dr. Marrero's conduct during the patient's diagnosis and treatment were based on erroneous assumptions that Dr. Marrero was responsible for the patient's care at various times when she was not. Dkt. 94. Plaintiffs opposed, Dkt. 111, Dr. Marrero replied, Dkt. 129, and Plaintiffs surreplied. Dkt. 134. Dr. Marrero also submitted a statement of proposed uncontested material facts in connection with her motion, Dkt. 95, Plaintiffs responded, Dkt. 109, and Dr. Marrero replied. Dkt. 130. Dr. Marrero's motion has been referred to me for a report and recommendation. Dkt. 146. For the reasons that follow, I recommend that Dr. Marrero's motion for summary judgment be **GRANTED IN PART**.

## BACKGROUND

The following facts are drawn from the parties' Local Rule 56 submissions and presented in the light most favorable to the nonmoving party. *See, e.g.*, *In re Oak Knoll Assocs., L.P.*, 835 F.3d 24, 29 (1st Cir. 2016). I have omitted portions of the proposed facts that state conclusions of law or that I deem irrelevant, but I otherwise resolve any conflicts between the parties' versions of events in favor of Plaintiffs.

Plaintiffs Brenda M. Irizarry Pagan, Dr. Emily E. Irizarry Pagan, Federico Perez Irizarry, and Cristian Perez Irizarry are adult grandchildren of the patient. Plaintiff Juan Carlos Izquierdo Amieiro is a grandchild-in-law of the patient. Defendants are Dr. Marrero; Metro Santurce, Inc., a corporation that owns Hospital Pavia Santurce ("Hospital Pavia"); and various other named and unnamed doctors and insurance companies.

The patient died on August 4, 2016 of atrial fibrillation brought on by hypercapnia and heart failure that resulted in acute myocardial infarction. Dkt. 1 ¶ 73. Plaintiffs allege that, as their expert witness Dr. Ian Cummings stated in his report and deposition testimony, Dr. Marrero violated standards of care in the following ways: she 1) failed to admit the patient to telemetry or to an ICU setting upon initial evaluation; 2) failed to consider cardiac deterioration as the cause of the patient's hypercarbia and respiratory distress; 3) failed to pursue the potential diagnosis of myocardial infarction despite electrocardiographic ("EKG") abnormalities potentially consistent with anterior wall infarction; 4) failed to consult cardiology immediately upon initially evaluating the patient at Pavia during her subsequent inpatient care; and 5) failed to measure, and react to, pro N-terminal B-type natriuretic peptide (NT BNP) values early in the hospital stay to diagnose CHF earlier. Dkt. 109 at ¶ 84.

The patient visited Hospital Pavia's emergency room on July 22, 2016 at 11:45a.m. complaining of shortness of breath and was attended by ER physician, Dr. Nelson Ayala. *Id.* at ¶ 17. Dr. Maldonado was the patient's attending physician. *Id.* at ¶ 18. Dr. Marrero received a Consultation Report for the patient's hypercapnia/hypoxia addressed to Dr. Maldonado/Dr. Marrero at 3:30p.m. and responded at 4:00p.m. *Id.* at ¶ 19. Dr. Marrero did not document that she verified the laboratory test results for the NT Pro BNP test, a cardiac marker test ordered by Dr. Ayala, results which were reported earlier that afternoon. *Id.* at ¶ 22.

Dr. Marrero's noted her diagnostic impressions for the patient as follows: hypercapnia, respiratory failure/hypoxemia. *Id.* at ¶ 28. She also noted crackles and decreased breath sounds, which are abnormal findings on her examination of the patient's lungs and an infection in the patient's left leg that was being treated by her cardiologist with antibiotics. *Id.* at ¶ 29–30. Her progress note, dated July 22, 2016 at 5:00p.m., listed the following diagnoses: pneumonia; respiratory failure/hypercapnia; hypoxemia; A fib on anticoagulation; left leg cellulitis partially treated; BA (bronchial asthma); HTN (hypertension); megacolon; and CHF (congestive heart failure). *Id.* at ¶ 31. Dr. Marrero reviewed an EKG of the patient and believed it consistent with a patient known to have arterial fibrillation. *Id.* at ¶ 49. Dr. Marrero reviewed a subsequent EKG and did not see any changes suggestive of myocardial infarction. *Id.* at ¶ 55. Dr. Marrero diagnosed the patient with pneumonia due to the patient's clinical lack of air. *Id.* at ¶ 56. Dr. Marrero did not place a consultation for cardiology since she considered that the patient's respiratory condition was critical because her oxygen was at 58, which is very low. *Id.* at ¶ 62. To manage this issue, Dr. Marrero and Dr. Ayala agreed that the patient should be on non-invasive ventilation BiPap. *Id.* at ¶ 63. At this time, Dr. Marrero also ordered a battery of tests for the patient, including a BNP test, which she would always order for patients with congestive heart failure. *Id.* at ¶ 36–44. The

results of the tests were to be given to the primary physician and Dr. Marrero would not see the patient again. *Id.* at ¶ 45.

Plaintiffs' expert witness, Dr. Ian Cummings was deposed on May 1, 2021. *Id.* at ¶ 81. Dr. Cummings testified that, per standard of care guidelines, Dr. Marrero was responsible for the patient until Dr. Maldonado took over the next day. *Id.* at 89. Dr. Cummings testified that Dr. Marrero should have admitted the patient to telemetry or to an ICU upon initial evaluation, that the failure to do so breached a standard of care, which deprived the patient of the necessary level of care and led to her demise. Id. at ¶ 91–92. He further testified that Dr. Marrero failed to specify whether the patient was suffering from acute or chronic CHF "which is a big difference," but that the medications Dr. Marrero ordered for the patient were for chronic conditions. *Id.* at 94. During his deposition, Dr. Cummings also guessed that the patient suffered a myocardial infarction around July 30, 2016, but could not determine the precise time because Dr. Marrero and others "did not perform standard of care assessment." *Id.* at ¶ 96–97.

The patient died in the late afternoon in front of her family members. Plaintiffs claim that the patient underwent needless pain and suffering and that she died sooner than she otherwise would have due to her deficient treatment. They argue that the treatment the patient received was substandard and inappropriate at many junctures. Plaintiffs claim that they themselves suffered emotional harm because of this substandard treatment. They accuse the defendants of negligence amounting to medical malpractice resulting in the patient's death and request a declaration that the defendants committed medical malpractice as well as an award of $75,000.00 each plus costs for non-economic damages.

In a previous report and recommendation, I recommended that some of Dr. Cummings's opinions and testimony regarding Dr. Marrero be excluded from further proceedings in this matter,

but deemed other portions admissible. Dkt. 149. Plaintiffs do not appear to offer any alternative evidence to prove that Dr. Marrero violated standards of care or played a role in causing or contributing to the patient's death.

## APPLICABLE LEGAL STANDARDS

The court views the record on summary judgment in the light most favorable to the nonmovant. *See, e.g.*, *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 43 (1st Cir. 2005). However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has presented evidence of the absence of a genuine issue, the nonmoving party must respond by "placing at least one material fact into dispute." *FDIC v. Anchor Props.*, 13 F.3d 27, 30 (1st Cir. 1994).

This is a diversity action; thus, the substantive law of the forum state controls. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). For this purpose, Puerto Rico is treated as the functional equivalent of a state. *See, e.g.*, *Rolón–Alvarado v. Mun. of San Juan,* 1 F.3d 74, 77 (1st Cir. 1993). Plaintiffs who seek to prove medical malpractice under Puerto Rico law must establish three elements. First, they must establish the "duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances)." *Cortés–Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 189 (1st Cir. 1997). Second, they must establish "an act or omission transgressing that duty." *Id*. at 189. Third, they must establish "a sufficient causal nexus between the breach and the claimed harm." *Id*. at 189. A plaintiff "ordinarily must adduce expert testimony to limn the minimum acceptable standard and confirm the defendant doctor's failure to meet it." *Id*. at 190.

## DISCUSSION

Dr. Marrero requests summary judgment in her favor, claiming that Dr. Cummings confirmed that violations of standards of care she committed while treating the patient were not causally related to the patient's demise; her supposed failures to diagnose conditions were the product of reasonable differences of opinion; and Dr. Cummings's assertions regarding her conduct during the patient's diagnosis and treatment were based on erroneous assumptions that she was responsible for the patient's care at various times when she was not. In her reply to Plaintiffs' response to her summary judgment motion, Dr. Marrero also argues that Plaintiffs misrepresent various pieces of evidence to create the appearance of factual controversies where none exist. As I note above, I previously recommended that some of Dr. Cummings's opinions and testimony regarding Dr. Marrero be excluded from further proceedings in this matter, while I deemed other portions admissible. Nevertheless, I will explain my reasoning for doing so in greater detail here.

Dr. Cummings's report states that Dr. Marrero violated standards of care in the following ways: she 1) failed to admit the patient to telemetry or to an ICU setting upon initial evaluation; 2) failed to consider Congestive Heart Failure ("CHF") as the cause of the patient's hypercarbia and respiratory distress; 3) failed to pursue the potential diagnosis of myocardial infarction despite electrocardiographic abnormalities potentially consistent with anterior wall infarction; 4) failed to consult cardiology immediately upon initially evaluating the patient at Pavia during her subsequent inpatient care; and 5) failed to measure, and react to, pro N-terminal B-type natriuretic peptide (NT BNP) values early in the hospital stay to diagnose CHF earlier. I address Dr. Marrero's response to these assertions below.

### 1. *Failure to admit the patient to telemetry or to an ICU setting upon initial evaluation*

Dr. Marrero first argues that Dr. Cummings acknowledged during his deposition that this alleged failure did not cause the patient's demise. Dkt. 94 at 19. That is not accurate. Instead, Dr. Cummings acknowledged that no such statement to this effect appears in his expert report. Dkt. 95-10 at 15:8. However, Dr. Cummings immediately goes on to say, "I think it's standard of care to do so. And I think it would have helped prevent the adverse outcome." Dkt. 95-10 at 15:15–18. He further explained that in an ICU setting, the patient's heart failure would have been "recognized immediately and responded to." Dkt. 132-2 at 71:3–5.

Dr. Marrero also argues that Dr. Cummings admitted that his report did not specifically cite any standard of care requiring admission to telemetry or the ICU. Dkt. 94 at 19. Though Dr. Cummings concedes this point, the First Circuit recently held that no such citation is necessary. *See Martinez v. United States*, 33 F.4th 20 (1st Cir. 2022). As I observed in my report and recommendation regarding Defendants' motion in limine seeking exclusion of Dr. Cummings's testimony:

> There is no clear indication that the medical expert in *Martinez* referenced any particular outside source, materials, or other basis for an opinion in crafting his report within the report itself, nor does it seem that any such indications arose during his deposition testimony. *See Martinez et al. v. United States*, 16-CV-2430 (RAM), 2019 WL 3022497 at Dkt. 33-2 (D.P.R. July 10, 2019). Instead, the expert made vague references to "accepted clinical practice" and "departures" from "accepted medical practice" without articulating how he gained awareness as to what the bounds of the relevant accepted clinical and medical practices actually were or explicitly stating that these principles were national in scope. *Id*. Nevertheless, the First Circuit overturned this court's determination that the expert's testimony should be excluded and found these and similar references acceptable when it came to establishing national standards of care. Furthermore, **in regards to one of the standards of care the First Circuit also found that it was enough that the expert made one of these seemingly vague references within deposition testimony rather than within the report itself.** *Martinez*, 33 F.4th at 28-29.

Dkt. 149 at 11. (emphasis added). Based on the First Circuit's decision in *Martinez*, Dr. Cummings's vague reference to a standard of care in his deposition testimony, as opposed to his report, is nevertheless sufficient. Because Dr. Cummings explained in his deposition how admitting the patient to telemetry or the ICU would have prevented the adverse outcome, and stated that the failure to do so violated a standard of care, I recommend that Dr. Marrero's motion for summary judgment on this issue be denied.

### 2. Failure to consider CHF as the cause of the patient's hypercarbia and respiratory distress and instead diagnosing chronic respiratory failure as the cause

Dr. Marrero next argues that Dr. Cummings's opinion that Dr. Marrero failed to consider CHF as the cause of patient Ferrer's hypercapnia constitutes a reasonable difference of opinion between medical professionals as to the patient's condition and diagnosis and, as a result, Dr. Marrero may not be held liable for damages resulting from that decision under Puerto Rico's clinical judgment defense. Dkt. 94 at 20. *See Rolon-Alvarado v. Mun. of San Juan*, 1 F.3d 74, 78 (1st Cir. 1993) ("[T]he Puerto Rico Supreme Court has held that even an acknowledged error in medical judgment cannot support a malpractice claim so long as the mistake is reasonable."); *Lama v. Borras*, 16 F.3d 473, 478 (1st Cir. 1994) ("[A]n error of judgment regarding diagnosis or treatment does not lead to liability when expert opinion suggests that the physician's conduct fell within a range of acceptable alternatives."). She notes that she, not Dr. Cummings, physically examined and auscultated the patient's lungs and heart; detected crackles and reduced breath sounds in her lungs; and did not detect any cardiac congestion. Dkt. 94 at 20. She further asserts that her findings were confirmed by the chest x-ray taken on July 22, 2016. Dkt. 94 at 20.

Plaintiffs counter that Dr. Marrero presents no evidence that there is a difference of opinion in the medical community regarding the use of cardiac markers and how to diagnose heart failure and that, alternatively, the standard of care required diagnostic tests to rule out cardiac deterioration

as a cause of the patient's symptoms. Dkt. 111 at 21. This, Plaintiffs assert, renders the error of judgment defense inapplicable. I previously recommended that Dr. Cummings be allowed to testify regarding Dr. Rodriguez's failure to consider that some of the patient's problems might have been caused by CHF because that allegedly fed into the decision not to take an EKG, which purportedly led to the patient not being treated for cardiac issues when Dr. Cummings believed that she still "could have been salvaged." Dkt. 147 at 17. At that time, I observed, that "[t]his . . . explanation implicates most of the other doctors named in the suit as well, as Dr. Cummings states in his report that Drs. Marrero, Maldonado, Cabrera, Perez, and Garcia all failed to sufficiently consider CHF." Dkt. 149 at 17. Thus, I concluded, "[t]o a limited extent, Dr. Cummings has therefore adequately explained how he believes Hospital Pavia and Drs. Marrero, Maldonado, Cabrera, Rodriguez, Perez, and Garcia caused or contributed to the patient's death." Dkt. 149 at 17. Because Dr. Cummings states that Dr. Marrero's failure to consider CHF violated a standard of care, and he adequately explains why this failure led to the patient's death, I recommended that he be allowed to testify on the subject. Because his testimony implicates Dr. Marrero, I also recommend that her motion for summary judgment on this issue be denied.

  3. ***Failure to pursue the potential diagnosis of myocardial infarction despite electrocardiographic abnormalities potentially consistent with anterior wall infarction***

  Dr. Marrero makes an identical "difference of opinion" argument regarding the failure to diagnose the patient with a myocardial infarction. Plaintiffs counter with the same argument that Dr. Marrero presents no evidence regarding a difference of opinion within the medical community on this issue. However, unlike the failure to consider CHF, Plaintiffs point to no evidence, either in Dr. Cummings's report or his deposition testimony, that explains how the failure to pursue the potential diagnosis of myocardial infarction despite electrocardiographic abnormalities ultimately caused the patient's death. In their opposition to Defendants' motion in limine to exclude Dr.

Cummings' testimony, Plaintiffs cite his deposition testimony stating that doctors failed to consider cardiac deterioration despite two EKGs suggestive of acute myocardial infarction. Dkt. 132 ¶ 4. However, Dr. Cummings does not explain how this supposed failure led to the patient's death. He simply concludes that "there are a number of glaring examples where opportunities were missed to correctly treat this patient and prevent her demise." *Id.* As such, I have previously recommended that Dr. Cummings testimony with respect to this issue be excluded. Dkt. 149. Because Dr. Cummings did not explain how Dr. Marrero's failure to pursue the myocardial infarction diagnosis led to the patient's death, and Plaintiffs present no additional evidence establishing causation, I recommend that Dr. Marrero's motion for summary judgment on this issue be granted.

   4. ***Failure to consult cardiology immediately upon initially evaluating the patient at Pavia during her subsequent inpatient care***

Dr. Cummings observed that consultation and cardiac markers and pro NT BNP were not requested until four (4) days after admission. Further, he found there was a failure to follow up on tests and orders from earlier in the patient's care (e.g., EKG, Troponin, pro NT BNP tests), some of which were never performed and some which were clearly abnormal (e.g., panic high values in pro NT BNP tests).

In Dr. Marrero's motion for summary judgment, she argues Dr. Cummings erroneously assumed that Dr. Marrero remained responsible for the patient's care "notwithstanding his acknowledgment that that she did not intervene or issue medical orders subsequent to July 22, 2016 at 5:00p.m." Dkt. 94 at 21. This argument alone is insufficient. The fact that Dr. Marrero did not intervene in the patient's care after 5:00p.m. on July 22 does not establish that she had no obligation to do so. Dr. Cummings further asserted in his deposition testimony that the standard of care dictates the last doctor who touched a patient remains responsible for that patient. Dkt. 109-5

at 8–11. Dr. Marrero vigorously disputes Dr. Cummings' testimony with respect to this point. Dkt. 95 ¶¶ 14–15, Dkt. 129 ¶¶ 7–8, Dkt. 130 ¶¶ 10, 15. Nevertheless, as I observed in my report and recommendation regarding defendants' motion in limine, Dr. Cummings does not explain how this alleged standard of care violation led to the patient's death. As a result, I recommend that Dr. Marrero's motion for summary judgment regarding this issue be granted.

5. ***Failure to measure, and react to, pro NT BNP values early in the hospital stay to diagnose CHF earlier***

Dr. Cummings listed this as a separate deviation from a standard of care, though it appears to be partially duplicative of violations regarding NT BNP tests alleged in deviation number four, above. Dr. Marrero responds with the same argument that she was not responsible for the patient's care when these alleged violations occurred, citing Dr. Cummings's acknowledgement that she did not intervene in the patient's care after 5:00p.m. on July 22. As discussed, this argument is insufficient. Also discussed above, Dr. Marrero repeatedly disputes that any national standard of care dictated that she remained responsible for the patient. Dkt. 129 ¶¶ 7–8, Dkt. 130 ¶¶ 10, 15. Regardless, Dr. Cummings again did not explain how this alleged standard of care violation led to the patient's death. As a result, I recommend that Dr. Marrero's motion for summary judgment regarding this issue be granted.

## CONCLUSION

For the foregoing reasons, I recommend that Dr. Marrero's motion for summary judgment be **GRANTED IN PART**. With respect to Plaintiffs' arguments that Dr. Marrero failed to admit the patient to telemetry or the ICU upon initial evaluation and failed to consider CHF as the cause of the patient's hypercarbia and respiratory distress, I recommend that Dr. Marrero's motion for summary judgment be denied. With respect to Plaintiffs' remaining arguments, I recommend Dr. Marrero's motion for summary judgment be granted.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 31st day of August 2022.

S/ *Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge